# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IRVIN E. RICHTER : CIVIL ACTION
:
v. :
:
NELSON G. PFUNDT, *et al* : NO. 09-2604

## MEMORANDUM OPINION

**Savage, J.** December 24, 2009

Seeking the return of his deposit money and damages for fraud and misrepresentation in connection with the failed sale of real estate, plaintiff Irvin E. Richter ("Richter") has sued the owner of the property, Nelson G. Pfundt ("Pfundt"), Pfundt's real estate agent and the agency with whom the agent was associated. Richter and Pfundt have filed cross-motions for summary judgment. Each contends that he is entitled to summary judgment as a matter of law, Richter claiming that there was no agreement and Pfundt, that there was an enforceable contract.

The central question is whether Richter and Pfundt entered into a binding contract for the purchase of real property located in Bucks County, Pennsylvania. Richter contends there is no enforceable agreement of sale because Pfundt's changes to the standard form agreement of sale Richter had signed constituted a counter-offer that he did not accept even though third-party defendant James Millspaugh ("Millspaugh"), whom he describes as his associate, initialed the changes. He claims that Millspaugh did not have written authorization to act as his agent as required by the Statute of Frauds. Pfundt, on the other hand, maintains that the parties entered into an enforceable agreement that Richter

breached by failing to close on the sale. He argues that the changes to the agreement he made were contemplated by the parties and, in any event, were accepted by Richter's associate who acted with Richter's authority.

Because there are disputed material facts that must be resolved to determine whether Pfundt's changes to the documents signed by Richter constituted a counter-offer rather than an acceptance of Richter's offer and whether Richter's associate had the authority to enter into a contract for Richter, summary judgment is inappropriate. Furthermore, the Statute of Frauds does not afford protection to Richter. Therefore, Richter and Pfundt's cross-motions for summary judgment will be denied.

With respect to the intentional and negligent misrepresentation claims, Richter alleges, in his first amended complaint, that the defendants[1] fraudulently represented that Pfundt was the owner of the property when the record owner was a trust. Richter avers that the defendants knew and concealed, or should have known, the identity of the actual owner. As a result of this non-disclosure, Richter contends he sustained damages incurred in proceeding with pre-settlement arrangements and conducting due diligence.

Defendants Leithbridge Co. d/b/a Kurfiss Sotheby's International Realty ("Kurfiss") and Michael W. Richardson ("Richardson"), the real estate agency and the agent, have moved for summary judgment, arguing that there was no misrepresentation because Pfundt had the ability and the authority to sell the property. Additionally, they contend that the undisputed evidence shows that Richter refused to close on the deal not because Pfundt could not convey good title, but because Richter had a falling out with Millspaugh,

---

[1] By stipulation, Richter subsequently dismissed all claims, except his request for declaratory judgment in Count 1, against Pfundt. (Document No. 35).

whom he himself characterizes as his "associate," and was having personal financial difficulties.

Richter cannot satisfy the essential element of materiality of his causes of action for misrepresentation or fraud. Nor can he show that there was a misrepresentation of a material fact. Therefore, Kurfiss and Richardson are entitled to judgment as a matter of law.

**Summary Judgment Standard**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In examining the motion, we must view the facts in the light most favorable to the nonmovant and draw all reasonable inferences in his favor. *Conopco, Inc. v. U.S.*, 572 F.3d 162, 165 (3d Cir. 2009).

The party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact. Fed. R. Civ. P. 56(c). Once the movant has done so, the opposing party cannot rest on the pleadings. To defeat summary judgment, he must come forward with probative evidence establishing the *prima facie* elements of his claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which he bears the burden of production. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). An inference based upon speculation or conjecture does not create a material fact. *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990).

**Facts**

On August 14, 2008, after negotiating with Pfundt, Richter signed a standard form agreement of sale for the purchase of approximately 40 acres of land in Upper Makefield, Bucks County, Pennsylvania owned by Pfundt and titled in a trust in his name. At the same time, Richter tendered a $350,000.00 deposit. The document signed by Richter omitted the zoning classification, and did not include both the maximum cost for which Richter would be responsible to correct any defects disclosed in any inspection reports before giving him the option to void the agreement, and the structures to be excluded from a wood-destroying insect infestation inspection. *Id.*, ¶¶ 9, 12, 15. Before Pfundt signed the agreement, his attorney, Don F. Marshall ("Marshall"), reviewed it and completed the sections left blank by Richter. *Id.*, ¶¶ 18, 19.

In addition to inserting the zoning classification into the space for it in the document, Marshall completed the sections relating to the cost of correcting defects that might be disclosed in inspection reports and the limited scope of the termite inspection. Paragraph 11(B) of the agreement provided that the purchaser agreed to accept the property if the total costs to correct any conditions discovered by an inspection fell below a specified amount. Marshall testified that he subsequently inserted "3,000" into the blank for that amount.

The standard form had a space to describe structures that the parties agreed to exclude from insect infestation inspection. Marshall inserted the words "in main house only" in the blank for excluded structures, thus limiting Pfundt's responsibility for insect infestation remediation.

Richardson, serving as Pfundt's real estate agent, retyped Marshall's hand-written

4

notes and forwarded pages containing the additions to Richter's associate, Millspaugh. After Millspaugh affixed Richter's initials on each of the changes, Pfundt executed the document on August 16, 2008.

**Elements of a Contract**

The essential elements of a contract are an offer, acceptance, and consideration or a mutual meeting of the minds. *Yarnall v. Almy*, 703 A.2d 535, 538 (Pa. Super. 1997) (citing *Jenkins v. County of Schuykill,* 658 A.2d 380, 383 (Pa. Super. 1995)). An acceptance must be unconditional. It is not valid if it materially alters the terms of the offer. *Id.* at 539 (citing *Thomas A. Ambruster, Inc. v. Barron*, 491 A.2d 882, 887 (Pa. Super. 1985)). A purported acceptance that materially changes the terms of an offer is a counter-offer that must be accepted by the party who made the initial offer before a contract can be formed. *Id.* (citing *First Home Sav. Bank, FSB v. Nernberg*, 648 A.2d 9, 15 (Pa. Super. 1994)).

Whether there is a contract between Richter and Pfundt turns on whether the document containing Pfundt's changes constituted a counter-offer rather than an acceptance. Answering this query requires a determination whether the changes were material. If the changes were immaterial, there was a contract. If the changes were material, there was no contract unless Richter accepted Pfundt's counter-offer. If the modifications created a counter-offer, the question then becomes whether Millspaugh had authority to accept the counter-offer on Richter's behalf. If he did not, there is no contract.

Richter argues that inserting the additional language materially changed the form agreement; and, therefore, the altered document constituted a counter-offer. Pfundt

contends that the insertions were mere "cleaning up" and contemplated by the parties. He further argues that even if the changes were material, Millspaugh had Richter's authority to accept them and Richter ratified Millspaugh's initialing the changes by proceeding with the necessary preparations for closing.

There is no dispute that the zoning classification was not material to the formation of the contract. The parties clearly had a meeting of the minds. Richter has acknowledged that he was aware of the proper classification at the time he signed the Agreement.[2] He cannot now claim that Pfundt altered the zoning classification that they both had contemplated.

The materiality of the other two insertions are disputed. Richter claims that the modifications increasing his potential liability for correcting conditions on the property, and limiting his protection from insect damage to the main house and excluding other structures from inspection were material. He contends that the termite inspection restriction significantly increased his risk, considering there were a barn and other buildings on the property.

Whether the revisions were material and whether they represented a complete expression of the parties agreement are questions of fact that must be resolved by a jury. *Mazzella v. Koken*, 739 A.2d 531, 536 (1998) (citing *Field v. Golden Triangle Broadcasting, Inc.,* 305 A.2d 689, 691 (1973)). The factfinder could reasonably decide that potentially increasing Richter's risk for repairs by $3,000.00 in a $3,500,000.00 dollar deal was or was not material. Likewise, the jury could conclude that insect damage to buildings, that may

---

[2] Richter Dep., at 356.

or may not have been a part of Richter's plans for the property, was or was not material.

If the changes were material, the issue becomes whether Millspaugh's affixing Richter's initials approving the changes constituted an acceptance of the counter-offer. Before reaching this issue, one must determine whether Millspaugh had the authority to execute Pfundt's counter-offer.

Richter has testified that he did not give Millspaugh authority to initial the agreement on his behalf. Contradicting Richter, Pfundt has presented evidence, specifically the testimony of Millspaugh, that shows that Richter had authorized Millspaugh to sign the agreement for him. Whether Richter gave Millspaugh the authority to act on his behalf is a factual dispute for the jury to resolve.

### The Statute of Frauds

Richter maintains that he is entitled to judgment as a matter of law with respect to Millspaugh's authority because the Pennsylvania Statute of Frauds, 33 Pa. C.S.A. §1, requires that an agent's authority to execute a contract for the sale of land must be in writing and Pfundt has failed to produce any writing that gave Millspaugh such authority. Contrary to his argument, the Statute of Frauds, designed to protect the landowner against false claims, does not support Richter.

In Pennsylvania, an agreement for the sale of land "cannot be specifically enforced unless it is in writing signed by the parties to be charged or their agents thereunto lawfully authorized by writing." *Polka v. May*, 118 A.2d 154, 155 (1955) (citing *Llewellyn v. The Sunnyside Coal Co.*, 89 A. 575 (1914)). The fundamental purpose of the rule is to prevent fraudulent and perjurious assertions of oral agreements. *Fannin v. Cratty*, 480 A.2d 1056,

1058 (Pa. Super. 1984) (citing *Brotman v. Brotman*, 46 A.2d 175 (1946)).

Richter's reliance on the statute of frauds is misplaced. He correctly notes that the Statute of Frauds requires written authority for an agent to make or create an interest in land. *See Fiegelman v. Parmoff Corp.*, 257 A.2d 575, 576 (1969); *Polka*, 118 A.2d at 155; *Glasgow v. G.R.C. Coal Co.*, 442 A.2d 249, 250 (Pa. Super. 1981). However, the requirement that an agent's authority be in writing applies only to agents of the seller of land. *Levy v. Parkway Baking Co.*, 200 A. 584, 587 (1938). The statute does not require written authority for an agent to act on behalf of the purchaser of real estate. *Id.* In this case, Richter, as the intended purchaser of Pfundt's property, cannot invoke the Statute of Frauds to abrogate Millspaugh's authority, if the jury finds he had it, to approve the changes.

## Misrepresentation

Both causes of action for negligent misrepresentation and intentional misrepresentation require as essential elements that the misrepresentation be of a material fact and an injury to the party acting in justifiable reliance on the misrepresentation. *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 277 (2005); *Gibbs v. Ernst*, 647 A.2d 882, 890 (1994).

The sole misrepresentation alleged in Richter's first amended complaint forming the basis for his causes of action for fraud is that the actual owner of the property was the G. Nelson Pfundt Revocable Trust and not Pfundt himself. There is no real dispute that Richter cannot prove justifiable or detrimental reliance necessary to make out the causes of action for negligent misrepresentation, fraudulent misrepresentation or fraud alleged in

8

the first amended complaint.

In his response to the defendants' summary judgment motion, Richter attempts to add new allegations of fraudulent conduct. These allegations were not made in the original or the amended complaint. Nor are they facts that Richter did not or could not have known when he filed his first amended complaint.

The difference between the owner listed on the agreement and the owner of record was not material. Even if it was, Richter suffered no harm as a result of any misidentification of the owner of the property. Pfundt was and apparently still is the trustee and the sole beneficiary of the revocable trust that held title to the property. He had the authority to enter into an agreement to sell the property. More importantly, the trust was ready, willing and able to transfer title; and, the title company issued a title report listing the trust as the grantor and was ready to insure title in Richter's name. The title company that searched the title committed, subject to receiving and reviewing a copy of the trust instrument, to insuring the transfer of title from "G. Nelson Pfundt, Trustee Under the Agreement of Trust Dated February 23, 2001 to Irvin E. Richter."

Given the absence of any injury and the lack of materiality of the misidentification of the owner, we do not address the argument raised by the real estate agent defendants that they owed no duty to Richter because there was no privity of contract. Nevertheless, for the same reasons that Richter's claims for fraud and misrepresentation fail, so does his cause of action for breach of fiduciary duty that revolves solely around the identity of the seller in the form agreement of sale.

9

**Conclusion**

Because there are disputed material facts regarding the materiality of changes made to Richter's offer and Millspaugh's authority to execute the agreement on Richter's behalf, Richter's and Pfundt's motions for summary judgment will be denied.

There are no disputed facts regarding the materiality of the ownership of the property or the absence of any injury suffered by Richter as a result of the misidentification of the owner in the agreement. Therefore, Kurfiss and Richardson are entitled to judgment as a matter of law on all causes of action asserted against them.